May it please the Court, I'm Megan Flynn representing the claimant, Lise Petrauskas. This case needs to be remanded for an award of benefits because the ALJ failed to identify any clear and convincing reasons for rejecting the claimant's testimony about her episodes of incapacitating headaches and episodes of incapacitating emotional periods. And when credited, that testimony requires a finding of disability, both given the vocational test, the DHS vocational testifying experts' comments about missing more than a couple days a month and also because it was the Commissioner's burden to prove employability. The Commissioner does not deny that the ALJ rejected claimant's testimony, one reason because of a lack of objective evidence regarding severity of her headache symptoms, but this Court has repeatedly emphasized that that's not a legitimate reason. The question is whether there's evidence to support an underlying condition, not evidence of to document the severity to which the claimant testifies about the symptoms. The Commissioner also does not deny that the ALJ rejected the claimant's testimony because she refuses to take anything more than Advil, despite having a good reason for doing so. And this Court has repeatedly said that when the claimant has a good reason for... Was there a reason why she didn't want to... She has a long history of addiction. Yeah, she didn't want to... she was concerned about drug addiction or something. Right. And she... and the record is clear that she tried a whole host of... beyond just Advil. I mean, she tried everything short of going into stronger medication, from chiropractic to massage to things I don't even know what they are when I read the terms. And the ALJ doesn't even... doesn't even seem to acknowledge that requirement that if there's a reason for the choice, then... It's not that the ALJ rejects the reason, the ALJ just doesn't even deal with it. It says she doesn't take Advil, therefore she's not credible. Or she only takes Advil, therefore she's not credible. The Commissioner also doesn't explain how the daily activities the ALJ pointed to in rejecting the claimant's testimony either are inconsistent with her testimony about a couple days a month of headaches or being wiped out by depression and anxiety, or explain how trying to take your dog for a walk every day or riding your bike occasionally is evidence of... that you spend a substantial part of your day in activities transferable to a work setting. And those are both requirements this Court has always imposed on when... when daily activities are going to be used as a reason to discredit a claimant's testimony. The Commissioner also makes no effort to defend the ALJ's... I don't think I understood what you just said. Oh, I'm sorry. Matt, she reports that she can only sit for 30 minutes and stand for 30 minutes. She takes long walks regularly. Those don't seem consistent. The specific symptoms that it comes down to in terms of why she's unable to be employed. I mean, being able to... having to sit. The ALJ took the sitting restrictions into account, actually. I mean, she found that the claimant was limited to sedentary work and unskilled sedentary work. The restriction the ALJ didn't take into account is the claimant's testimony that she has these episodes of headaches and sometimes episodes of anxiety or depression where she's incapacitated to the extent that she can't turn on the lights in her room, she can't leave the house. And the vocational expert said if that's what somebody has, they can't maintain employment. But that requires determining that what the claimant said on that regard was true. Correct. And the ALJ decided that the credibility of the claimant was in question because her testimony was not consistent with her actual activities that she also testified to. And I don't know what's wrong with that conclusion. Well, but the ALJ accepted the limitations on mobility when she found the claimant was sedentary. The ALJ... That doesn't change the question as to whether somebody who testifies, I can't sit or stand for more than 30 minutes but I walk for two or four miles a few times a week and I went hiking in the Rockies with my family, there's a disconnect there. And I think it's a disconnect that the ALJ may fairly say, look, I don't find this claimant's testimony credible. The fact of life is that people exaggerate. I referenced a couple days ago, I heard a story in NPR the other morning about claims being submitted in the Gulf to Kenneth Feinberg's commission, whatever he's running, and he finds a lot of them wildly exaggerated. Well, people do. This claimant may be exaggerating because the ALJ says, look, she says she can only do this, but she also says she does that. How do these compute? Now, he may accept some of her limitations and lean over backwards, but I think that may be a fair basis for saying, I don't accept her testimony as credible. And as a result, I don't have to accept that part of her testimony that says, from time to time I have these incapacitating headaches and can't do anything, hence I'm fully disabled. There is no other evidence really supporting that other than her say-so. And if her say-so isn't reliable, she doesn't win. So I think you have to deal with that credibility issue. Well, the other reasons, though, the ALJ gave are definitely not legitimate under this Court's analysis. And the ALJ also rejected the claimant's testimony because, under the impression that her husband had said something contradictory, but as set out in the brief, the husband didn't say anything contradictory. In fact, what he said is that she has episodes of incapacitating pain when she just can't do anything. And in addition, the ALJ failed to give controlling weight to the treating physician when there's page 26 of the answering brief sets out basically the reasons the ALJ had, or the best reasons the ALJ came up with for not giving controlling weight to the treating physician, and they're not supported by the record. Dr. McDevitt did not say, he was the testifying expert, did not say that the claimant could always perform even simple tasks. He, in fact, said that during her periods of incapacitating depression, which I think she probably has a fair amount of, she couldn't do that. And both of those errors would require a remand for an award of benefits. The other error is dealing with failing to discuss the testimony of the husband in terms of listing impairments and failing to discuss the testimony or the evidence from the vocational evaluation in terms of its relevance to the listings. Require a remand, but that would be going back for additional addressing that evidence. But the failure to give Dr. Bell controlling weight and the reliance on improper basis for discrediting the claimant's testimony. The other problem with the ALJ's discrediting of the claimant's testimony is she characterized the standard as preponderance of the evidence. The standard is clear and convincing evidence because there's no dis- and the Commissioner doesn't dispute that we're to the- that the claimant's documentation of some disability gets her to the point that her testimony about her headaches can only be discredited for clear and convincing reasons. And the ALJ gave a series of reasons that are not legitimate. And I'm going to save the rest of my time for rebuttal. Thank you. Okay. Good morning, Your Honors. Lisa Wolfe on behalf of the Commissioner. This is a Title II case, that is it's a disability insurance benefits case. And the disability insurance lapsed in September 2005. That is Ms. Petroskas, who I'll refer to as the claimant because I will not say it correctly, needed to prove she was disabled prior to September 2005. She's a younger individual born in 1970. In this case, substantial evidence supported the ALJ's residual functional capacity finding. These are admittedly difficult cases. These are the hardest types of cases when you have a complex web of physical and mental impairments, in this case stemming from a 1997 horse accident where she fell off a horse. If you look at the activities, now she claims a disability beginning in 2001, but if you look at her activities subsequent to the accident and subsequent to the alleged onset date, this case hinges on credibility. We task the ALJs with this very difficult job of weighing the evidence in these type of cases. It's important to note that there's, the evidence is, that there is inconsistent medical evidence here. We have a treating physician, Dr. Bell, who has opined on a few occasions that the claimant has, is disabled, has disabling limitations from fibromyalgia and from post-concussion headaches, et cetera, and that's in the record and briefed by the parties. But we assert here that the ALJ gave specific, clear, and convincing reasons to find the claimant less than credible with her assertions to the severity of her symptoms. We're not, it is not in dispute that she has impairments. What we're here, what the ALJ must look at is the severity of those impairments and as reported to her treating physicians. The ALJ here found the claimant less than credible. He noted the medical evidence, and objective evidence can be a reason under Birch, so long as it's not the only reason. And he noted the other treating physician, Dr. Miller, opined she was not disabled. Dr. Miller treated her on an almost monthly basis in 2001-2002, and he opined he didn't feel that she was disabled at page 180 in the transcript. The medical expert, Dr. McDevitt, noted that Dr. Bell relied largely on claimant's self-reporting. The exams, largely normal, not entirely normal, but largely normal. Some muscle spasms in 2003. She's fluctuating with her symptoms. So the ALJ, we tasked the ALJ with weighing this evidence, and he called upon a medical expert, Dr. McDevitt, to help him in this task. Dr. McDevitt reviewed the evidence, and he also felt that Dr. Bell's conclusions,  he felt that those conclusions by Dr. Bell were not supported by the evidence and were based on the self-reporting of the claimant. If we look at the record as a whole, we have the treating physician, Dr. Miller, who said not disabled. We have another treating source, Dr. Smirthwaite, at page 223 or 233, sorry, who saw the claimant 14 times and found no significant cognitive impairment. Smirthwaite, he was the doctor from Kaiser, right? I believe so, yeah. I separated out the medical evidence because it got a little confusing in my factual history. And he found no cognitive impairment. Now, the ALJ gave the claimant the benefit of the doubt, even though Dr. Smirthwaite found no cognitive impairment. Dr. Clolilus at 430 said that the psych history wouldn't prevent work, and her examination was inconsistent with her reported level of symptoms. This is the type of evidence we tasked the ALJ with weighing. He called upon the services of the medical expert, as I mentioned. But even with this medical evidence, and even though the evidence probably could have supported the light residual functional capacity, he limited her to sedentary, and he accepted, giving her the benefit of the doubt, that there was some decrease in cognitive functioning. And just to be fair to her, and he found that he limited her to unskilled work. And this is, if we look at the record as a whole, a rational interpretation. As I started, these are not easy cases, and you look at all the evidence here, especially when there's numerous treating sources. You know, Dr. McDevitt noted that Dr. Bell not only relied on the self-reporting of claimant, but also didn't do a formal mental status exam, and that the objective findings that he presented were not consistent with his ultimate conclusions. And so that was a legitimate basis. So even if some of the reasons are discounted, the remaining evidence supports the ALJ's conclusions as to the residual functional capacity finding when you look at the medical evidence and the credibility factors here. So if you take a look at her testimony. The plaintiff's testimony? The claimant's testimony. She testified about her severity. Oh, yes. Very much so. And to her, the pain is probably very real. Very difficult cases. I'm sorry. So counsel just argued, you know, she testified about limitations of what she could do at work and whatnot. But, you know, our case law does talk about how that, just because a claimant can do something around the house or go out and walk or whatever, that that is not, you know, that's not disqualifying. The case law specifically recognizes that people can, you know, have a basic normal life even if they still be disabled. And that is definitely a factor that the ALJ looks at and one that I looked at in this case. And I would just for the record point that the activities of daily living here are not insignificant. They are quite extensive. Traveling to India, hiking in the Rockies, 357, which is a regular walker, two to four miles a day, 164, and throughout the record. Working strenuously in your garden. So was this during the relevant time period? Yes, yes. But prior to, the master's degree was just prior to the relevant, the alleged onset date. So I didn't include that per se. That was after the fall, before the onset date. Correct. And the plaintiff testified that she chose 2001 as an onset date because she had worked as a baker in 2001 and that was the last day. And there was a stressing event that occurred to a friend of hers. And that was when she, her anxiety, she said stopped her from working. So yes, the activities of daily living, if you look at Stubbs Danielson, this is far in excess of those type of activities. And I've not even hit all the activities, just my crib notes here. And how about the husband's testimony? Right. So the ALJ needed to give germane reasons to, if you wanted to discount the husband's testimony. What does that mean in this context? Germane reason? I like the case of Valentine, a fairly recent case. You need to give a, some sort of reasonable, you know, what, are you asking what germane is? And use, as used in this context. Right. I have to admit I've pulled the term from case law, but to me it means some sort of valid and rational reason that if you're going to reject something, you need to have some foundation in the facts. Part of the procedure talks about an amendment being germane, that it speaks to the same subject matter. It doesn't have to be tightly knit. And I've tried to go through the same exercise you described and reached pretty much the conclusion, well, is it relevant? Are the reasons given by the ALJ relevant to discount? I mean, do they make sense in terms of discounting the husband's testimony? Well, here, Your Honor, the husband testified to her activities that exceeded her reported ability. And that's a germane reason under Valentine. Could he have given more, honestly? Yeah. I would have liked to have seen more. But we have the record before us, and it was a germane reason. And that stands, it should stand on its own. Now, in our case law, it says, and uses the word germane for the husband, what's the proper standard for evaluating the claimant's own testimony in these circumstances? I mean, your brief does make reference to clear and convincing. Right. Does the ALJ make reference to clear and convincing? Are you discussing the preponderance of the evidence allegation? Well, I'm focusing specifically on evaluation of the claimant's testimony. And how do we determine what standard the ALJ applied in making that evaluation? Right. Did the ALJ apply a clear and convincing standard? I believe the ALJ did here. She used at least three reasons to discount the plaintiff's credibility. So even though she doesn't use the terminology or articulate what the standard is, you think it's satisfied by what's stated in the opinion? By her references to the record for discounting the credibility. If I could, Your Honor, the preponderance shows up. I didn't know where this was coming from. It's on page 363 of the ALJ's decision, and it's used in conjunction to the vocational counselor. And preponderance, you know, we cite these boilerplate language all the time, but preponderance is a term of art. I can't find my notes on it. But we use the substantial evidence standard, and that's more than preponderance. I think I'm out of time. Well, our evaluation of the agency's decision is by the substantial evidence standard. Maybe I misunderstood the reference before. So I took preponderance to mean the standard that the ALJ was applying to the submissions to her in this case. No. I submit that the ALJ rejected that, her testimony, for clear and convincing reasons. Okay. Thank you. Thank you. We have a few minutes for rebuttals. The claimant's reference to having taken long bike rides and long walks, the ALJ cites, and also Dr. Miller's evaluation for 2001-2002. The India trip is also way early in the alleged onset. We go all the way to 2005, and those things are not there in 2005. What, the biking? The trip to the Rockies was later, yes. Oh, it was 2004 or something like that? I'm sorry. I think the Rockies. It was 2004. So why do we say, I mean, that's something that sounds pretty strenuous. Do we say if you take a trip to the Rockies you don't have headaches three days a month that are incapacitating? We don't. It's not inconsistent. Dr. Smirthway and Dr. Stolzberg. I guess it depends what you're doing in the Rockies. How long you're there, how many days in a row you hike. Are you hiking? Are you climbing up the mountain? And she explained that she, it was something she used to do a lot. They tried to do it. It didn't go very well. Dr. Stolzberg and Dr. Smirthway both actually agree with Dr. Bell's testimony, with Dr. Bell's opinions about the post-concussion syndrome. The brief sets out why they're not contradictory. And Dr. Miller, actually the closest he came to disagreeing with the disability equation is in a 2000 report, 2002 report he said, I don't feel the climate is disabled enough to not get out and exercise. Again, that's not disagreeing with Dr. Bell's explanation. Dr. Bell saw from 1999 on, under the analysis that the ALJ should have gone through, at a minimum he was entitled to the greatest weight of anybody in the record. The ALJ totally skipped that analysis. And really he should have been given a controlling weight because none of the contradictions the ALJ identifies for Dr. Bell are real. Unless there's other questions. No, I don't believe so. Thank you. Thank you. We appreciate the argument. Thank you very much. And this matter is submitted.
judges: Tashima, Paez, Clifton